**UNITED STATES of America,**
**Appellee,**

v.

**Michael HERNANDEZ, Defendant–**
**Appellant.**

**Docket No. 02–1261.**

United States Court of Appeals,
Second Circuit.

April 10, 2003.

---

Jeffrey A. Lazroe, Buffalo, NY, for Appellant.

Joel L. Violanti, Assistant United States Attorney for the Western District of New York (Michael A. Battle, United States Attorney, of counsel) Buffalo, NY, for Appellee.

PRESENT: NEWMAN, SACK, and SOTOMAYOR, Circuit Judges.

## SUMMARY ORDER

**THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the United States Courthouse, Foley Square, in the City of New York, on the 10th day of April, two thousand and three.

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that the judgment of the district court be, and it hereby is, AFFIRMED.

The defendant Michael Hernandez appeals from a judgment entered on April 23, 2002 in the United States District Court for the Western District of New York (John T. Elfvin, *Judge*), convicting him, after a guilty plea, of (1) possession of a firearm as a previously convicted felon in violation of 18 U.S.C. § 922(g)(1), possession of ammunition as a previously convicted felon in violation of 18 U.S.C. § 922(g)(1), and possession of a stolen firearm that had been transported in interstate commerce in violation of 18 U.S.C. § 922(j), and sentencing him principally to three concurrent terms of 180, 180, and 120 months' imprisonment. In accordance with a conditional plea agreement, Hernandez reserved the right to appeal the district court's denial of his motion to suppress evidence. In this appeal Hernandez alleges that the evidence used against him was obtained in a search that violated his rights under the Fourth Amendment to the United States Constitution.

The district court's factual findings, with which the parties are familiar, are set forth in detail in *United States v. Hernandez*, 2001 WL 1344832, at \*2–\*7 (W.D.N.Y. April 13, 2001) (unpublished). We recite here only those facts required to explain our result.

■ After an anonymous "911" call, the police officers on patrol, including Officer Vidal, were told by the 911 operator that there was a "Puerto Rican man" with a gun at 43 York Street who was riding in a gray, four-door Nissan, which was being driven by a woman, and was heading south on West Street.[1] When Vidal spotted Hernandez's car, it turned out to be a gray, four-door Mazda, heading south on West Street, which was being driven by a man (Cordero), with another man (Hernandez) in the front passenger seat, and a woman (Johnson) in the back seat. Corde-

---

1. Although the anonymous caller partially described the license plate number of Hernandez's car, the 911 operator did not transmit this piece of information to the police officers on patrol. As a result, the partial license plate number cannot be used to justify Officer Vidal's seizure of the car. *See United States v. Colon*, 250 F.3d 130, 134–38 (2d Cir.2001) (holding that the Fourth Amendment doctrine of imputed knowledge does not apply to communications between civilian 911 operators and law enforcement officers).

ro voluntarily stopped the car in front of a convenience store to buy cigarettes, and, perhaps, for Hernandez to buy something too. Vidal pulled up behind the parked car and turned on the cruiser's flashing overhead lights.

In an unpublished report and recommendation, the magistrate judge concluded that Hernandez's Fourth Amendment rights were "not implicated" at this point because Hernandez's vehicle was voluntarily "stopped" by the driver, Cordero, rather than being forcibly "seized" by Officer Vidal. See Hernandez, 2001 WL 1344832, at *10–*11. In the alternative, the magistrate judge reasoned that even if Officer Vidal had actually "seized" the car, Vidal's seizure was justified by the anonymous call, which had "sufficient indicia of reliability," and thus, provided reasonable suspicion that criminal activity was afoot. See id. at *11. The magistrate judge's report was adopted in toto by the district court. See id. at *1.

■ We disagree with the magistrate judge on both points. When the overhead lights went on, the car was "seized"—in the sense that no reasonable driver would think that he was free to leave, see United States v. Mendenhall, 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)— without reasonable suspicion that criminal activity was afoot, see Terry v. Ohio, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Moreover, the anonymous 911 call had not yet been corroborated, and did not have sufficient indicia of reliability to justify Vidal's stop of the car. See Florida v. J.L., 529 U.S. 266, 270–71, 120 S.Ct. 1375, 146 L.Ed.2d 254 (2000).

■ But our inquiry does not end here. The record does not demonstrate precisely what made Hernandez exit the car—his desire to buy something, the appearance of the police car, or the turning on of its overhead lights. But even if the

turning on of the overhead lights caused Hernandez to exit the car, Hernandez himself was not "seized" until he turned around, walked back toward Vidal, and submitted to Vidal's order to halt. See California v. Hodari D., 499 U.S. 621, 624–29, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991). By that time, Hernandez had already exited the car, left the door open, walked away hastily, looked back at Vidal, said falsely, "No habla, no habla," and then turned around, recognized Vidal, and returned speaking English. Taken together with the anonymous call, these unusual actions gave Vidal reasonable suspicion to justify a Terry stop of Hernandez, after Hernandez had left his car. See Terry, 392 U.S. at 30, 88 S.Ct. 1868; J.L., 529 U.S. at 270–71, 120 S.Ct. 1375.

At this point, the second police cruiser arrived and Officer Locicero stepped out. He had heard the 911 operator's dispatch, including that there was a "man with a gun," and based upon the dispatch, he knew that Vidal had stopped a gray, four-door Mazda, with three occupants. He observed what was plainly a Terry stop: Vidal was talking to Hernandez, who was standing in front of Vidal, with his back to him, leaning onto the car, with both of his hands on the trunk. Locicero saw Cordero outside of the car, presumably talking to another officer, being subjected to a Terry stop by other officers. Locicero thought that one of the two male suspects was "Puerto Rican," which was consistent with the anonymous call. Locicero saw Johnson in the back seat of the car. The car's passenger-side front door was open and the car's dome light was on.

It was under these circumstances that Locicero thrust his head into the open door, aimed the beam of his flashlight onto the floor, saw the gun under the passenger seat, secured the gun, and warned the other officers: "I got a gun, cuff him." Hernandez, Cordero, and Johnson were

arrested by the other officers, and Locicero brought the gun back to police headquarters.

The magistrate judge found that the firearm was admissible under the "plain view" exception to the warrant requirement because Hernandez had opened the car door himself and Locicero had already observed the firearm before he "leaned" into the car to retrieve it. *See Hernandez*, 2001 WL 1344832, at *15. We find this view doubtful,[2] but we need not and do not decide the plain view issues presented by this appeal. We conclude that Locicero's minimally intrusive search was justified as a protective search for weapons under *Terry*. We affirm the district court's judgment on this basis alone.

■ As the Supreme Court has explained,

> there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime.

*Terry*, 392 U.S. at 27, 88 S.Ct. 1868.

> The [Terry] Court ... held that a search must meet two requirements to fall within this "narrowly drawn authority." First, it cannot be motivated solely by a "hunch" that an individual is armed and dangerous. *Id.* There must instead be a suspicion supported by "specific reasonable inferences which [the officer] is entitled to draw from the facts in light of his experience." *Id.* Second, the weapons search must be "confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault

of the police officer." *Id.* at 29, 88 S.Ct. 1868.

*United States v. Casado*, 303 F.3d 440, 444 (2d Cir.2002) (quoting *Terry*, 392 U.S. at 27, 29, 88 S.Ct. 1868). "Because 'no judicial opinion can comprehend the protean variety of the street encounter,' [we can] 'only judge the facts of the case before [us].'" *Id.* at 445 (quoting *Terry*, 392 U.S. at 15, 88 S.Ct. 1868).

When Locicero arrived on the scene—having heard about the anonymous 911 call, observing Hernandez and perhaps Cordero detained by other officers, and Johnson sitting in the back seat of the car—he had reasonable suspicion to perform a limited protective search of the passenger compartment of Hernandez's car. *See Alabama v. White*, 496 U.S. 325, 329–32, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990); *see also Michigan v. Long*, 463 U.S. 1032, 1045–53, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983) (holding that when police officers conduct a *Terry* stop of a vehicle, and have reasonable suspicion that "suspects are ... dangerous and may gain immediate control of weapons," they may search the vehicle's passenger compartment for weapons); *United States v. Colon*, 250 F.3d 130, 135 (2d Cir.2001) ("an arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act reasonably in relying on information received by other law enforcement officials").

*Terry* calls for a fact-specific inquiry into the reasonableness of the search under the totality of the circumstances. On the facts of this case—the car was stopped, there was suspicion of the presence of a gun, one or two passengers were undergoing *Terry* stops related to possible gun possession, and a passenger remained in

---

**2.** During oral arguments, the government conceded that Locicero's body had "broken the plane" of the open door, and entered the interior of the car, before he had observed the firearm.

the stopped automobile from which the other two had exited—we find that Locicero's minimally intrusive visual search of the floor of the front passenger seat through an opened car door, which he conducted to ensure that there was no weapon inside the car, was justified by his reasonable suspicion that criminal activity was afoot.

The search of the vehicle did not violate the Fourth Amendment. The district court was correct to deny Hernandez's motion to suppress the evidence obtained from the car.

For the foregoing reasons, the judgment of the District Court is hereby AFFIRMED.