

**FILED**
April 10, 2026 02:48 PM
SX-2024-CR-00375
**TAMARA CHARLES
CLERK OF THE COURT**

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

PEOPLE OF THE VIRGIN ISLANDS,

*Plaintiff,*

v.

ROY HENDERICKSON,
SHAMOI BELL,

*Defendants.*

CASE NO. SX-2025-CR-00008
SX-2024-CR-00375

Cite as: 2026 V.I. Super 14

**MEMORANDUM OPINION AND ORDER**

¶1    **THIS MATTER** is before the Court on Defendant Shamoi Bell's ("Bell") Motion to Suppress filed on February 4, 2026, amended the same date with "Notice of Joinder Roy Hendrickson's Motion to Suppress" and Defendant Roy Hendrickson's ("Hendrickson") March 2, 2026, Motion to Suppress, and "Joinder on Defendant Bell's Motion to Suppress". The People have not filed responses to the motions. (Hendrickson and Bell are jointly referred to herein as "Defendants.")

¶2    The Court held a suppression hearing on March 3, 2026, at which Bell was represented by Assistant Territorial Public Defender Truman Coe, Esq. Hendrickson was represented by Assistant Conflict Counsel Kathryn Slade, Esq. The People were represented by Assistant Attorney General Jasmine Griffin, Esq.

¶3    At the Suppression hearing, the People called three witnesses before resting. Defendant Bell called one witness, and Defendant Hendrickson did not call any witnesses. Upon consideration of the evidence and arguments of counsel, the Court will deny the motions to suppress because the defendants challenging behavior, physical resistance to detention, interference with law enforcement efforts and ultimate flight from the scene, coupled with the officers' initial smell of marijuana, gave the officers probable cause to believe that criminal activity was afoot, thereby justifying a search of the vehicle under the automobile exception to the warrant requirement under the Fourth Amendment.

**Memorandum Opinion and Order**
*PVI v Roy Henderickson,* SX-2025-CR-00008
*PVI v. Shamoi Bell,* SX-2024-CR-00375
Page 2

**2026 VI Super14**

## I. FACTUAL AND PROCEDURAL BACKGROUND

¶4    On December 20, 2024, police officers Najeem Daniel and Tami Patterson were on saturated patrol on Northside Road, St. Croix, as a part of a crime reduction initiative call "Set de Tone". Officer Daniel is an eleven-year veteran of the Virgin Islands Police Department, and Officer Patterson is a seven-year veteran of the Virgin Islands Police Department.    They were both working in the Special Operations Bureau and had conducted hundreds of traffic stops during their employment with the Virgin Islands Police Department.

¶5    At approximately 6:20 p.m., Officers Daniel and Patterson were exiting the Five Corner Plaza when they observed a blue Honda Civic with no front license plate and "heavily tinted windshield" driving in a westerly direction on the Northside Road.  Officer Patterson testified that from her knowledge and experience, she knew that windshields should not be tinted pass the AS-1 line "per the Virgin Islands Code". Additionally, she knew that license plates must be affixed to the front and rear bumpers, and the Honda Civic did not have a front license plate. The officers, who initially turned heading east, made a U-turn on the Northside Road with the intent to traffic-stop the blue Honda Civic. They turned on the blue lights and siren. The blue Honda Civic, which was traveling a short distance in front of the officers, turned into the James Memorial Funeral Home parking lot. Sergie Bell, the father of Shamoi Bell, and cousin to Roy Henderickson, testified that on the same date, there was a viewing for his deceased mother at James Memorial Funeral Home, the inference being that Hendrickson and Bell were going to the viewing.

¶6    Officers Patterson and Daniel followed the Honda Civic into the parking lot of James Memorial Funeral Home and pulled up alongside it.  As they were exiting, they observed that Hendrickson and Bell (whose identities they learned later) had exited the Honda Civic and were standing by the driver's and passenger's doors. Officer Patterson and Officer Daniel testified that from their experience, when persons quickly exit their vehicle on a traffic stop, they may be "attempting to evade." Officer Daniel testified that from his experience as an officer, people abandon their vehicle at traffic stops because they have something on their person or in the vehicle.

¶7      Upon exiting, Officer Patterson approached the passenger side of the Honda Civic and told Bell to have a seat back in the car. Bell complied. On her approach, Officer Patterson's "initial observation was that it smelled heavily of marijuana." When Bell sat back in the passenger seat, he immediately reached to the back and brought forward a green bag. Bell told her that he was getting his driver's license, to which Officer Patterson responded that she did not need his driver's license because he was not the driver. Officer Patterson's body camera footage confirmed her testimony regarding her initial approach, and that she told Bell that she did not need his driver's license when he reached to retrieve it. It also verified that Bell was cooperating with Officer Patterson's directives up to that point.

¶8      Meanwhile Officer Robin Richards, who was also on saturated patrol in the same initiative, arrived on the scene in another police vehicle.  He approached Officer Patterson and Bell on the passenger side. Officer Patterson requested that Officer Richards stay with Bell while she went to the driver's side to assist Officer Daniel with the driver. When Officer Patterson arrived at the driver's side, she observed that Officer Daniel was already talking to the driver. Discussions between Officer Daniel and Hendrickson could only be corroborated through Officer Patterson's body camera recording. Officer Patterson's body camera showed that Officer Daniel advised Hendrickson that he was stopped because he did not have his front license plate.

¶9      Like Officer Patterson, Officer Daniel quickly exited the police vehicle when it pulled up alongside the Honda Civic because he observed that the driver had exited the vehicle. He approached the driver, who he later learned was Hendrickson, and ordered him back inside the Honda Civic. Hendrickson complied and sat in the driver's seat. He told Hendrickson why he was stopped.  Officer Daniel asked Hendrickson for his driver's license, and Hendrickson reached for it in his pocket. Hendrickson was verbally protesting the stop. Officer Daniel testified that he smelled the strong odor of marijuana and at that point asked Hendrickson if he had a license from the Office of Cannabis Regulations ("OCR"). He testified that Hendrickson responded, "no". This statement, however, was not corroborated by the body camera footage nor testified to by any other officer.

¶10      When Officer Patterson arrived at the driver's side, she heard the driver asking why he was being stopped. Although Officer Daniel had previously responded, Officer

**Memorandum Opinion and Order**
*PVI v Roy Henderickson, SX-2025-CR-00008*
*PVI v. Shamoi Bell, SX-2024-CR-00375*
Page 4

**2026 VI Super14**

Patterson told Hendrickson that it was because his glass was tinted beyond the AS-1 line and he was missing the front license plate. This discussion was captured on the body camera footage. Officer Patterson also testified that she heard the driver say that the vehicle was rented and that's why it did not have a front license plate. Meanwhile, Hendrickson continued to protest the stop.

¶11 Officer Daniel then instructed Hendrickson that he needed to make a "check" of the vehicle and directed that Hendrickson should step out of the vehicle. Hendrickson did not initially comply, so Officer Daniel placed his hand on Hendrickson's right hand and escorted him out of the Honda Civic. Officer Daniel testified that at that time, Hendrickson was not free to leave.

¶12 Officer Patterson and Officer Daniel observed that while outside of the vehicle, Hendrickson appeared to be "inching toward the rear" of the Honda Civic. Hendrickson was verbally and physically objecting to being detained. Officer Daniel was attempting to have handcuffs placed on Hendrickson, but Hendrickson kept twisting himself in a manner that made it difficult to put on the handcuffs. The interaction moved Officer Daniel and Hendrickson toward the trunk area of the Honda Civic. Meanwhile, the body camera footage shows that Bell walked toward the trunk of the Honda Civic and handed over the registration for the vehicle and his driver's license to the officers. Officer Patterson testified that it appeared that Bell then tried to interfere with Officer Daniel's efforts to place handcuffs on Hendrickson since Bell kept holding out his hand as though to stop Officer Daniel. Officer Patterson explained that she and Officer Richardson had to tell Bell to back up. This interaction was captured by the body camera.

¶13 Without warning, Bell and Hendrickson took off running in a northerly direction towards Northside Road. Bell ran in the direction of Dr. Prasad's Office. When Officer Patterson caught up with Bell, Officer Daniel had already tased Bell. Bell tried on at least two other occasions to flee and was tased repeatedly. He eventually stopped trying to run. Officer Patterson left Bell with Officer Richards and two other officers who had arrived on the scene and returned to the Blue Honda to assist Officer Daniel. Bell was eventually removed from the scene in an ambulance. Hendrickson successfully fled the scene.

¶14 Officer Patterson and Officer Daniel returned to the Honda Civic, where they were intent on searching and securing the vehicle. Both testified that it was the policy of the

**Memorandum Opinion and Order**
*PVI v Roy Henderickson*, SX-2025-CR-00008
*PVI v. Shamoi Bell*, SX-2024-CR-00375
Page 5

**2026 VI Super14**

Virgin Islands Police Department that when a driver was absent or abandoned a vehicle, before it could be towed and impounded, the police officers needed to conduct an "inventory search". The search uncovered a green bag on the front passenger seat, a black backpack from the back of the car, the contents of which were a firearm and "a lot" of marijuana. In the trunk was a Champs sports gear jacket, in which was wrapped a rifle with two magazines taped together with the firearm. Officer Patterson admitted that her probable cause affidavit did not mention the inventory search.

¶15    The police officers decided not to call a tow truck. Officer Patterson testified that after checking the registration, they learned the name of the owner of the vehicle. The officers called the owner who came and picked up the vehicle.

¶16    Following his arrest on December 20, 2024, Shamoi Bell was charged with one count of unauthorized possession of ammunition, in violation of 14 V.I.C. §2253(a), one count of possession or sale of ammunition, in violation of 14 V.I.C. §2256(a), and one count of possession of a controlled substance with the intent to distribute, in violation of 19 V.I.C. §604(a)(1).

¶17    On January 10, 2025, when Hendrickson reported to the Office of Probation at the Superior Court of the Virgin Islands, he was arrested. He was charged with Carrying of a Firearm, Open or Concealed, in violation of 14 V.I.C. §2253(a); Possession or Sales of Ammunition in violation of 14 V.I.C. §2256(a); and Possession of a Controlled Substance/ Intent to Distribute in violation of 19 V.I.C. §604(a)(1).

## II.    LEGAL STANDARD

¶18    The Fourth Amendment to the United States Constitution protects persons against unreasonable searches and seizures. *Simmonds v. People*, 53 V.I. 549, 555 (2010)(citing *United States v. Karo*, 468 U.S. 705, 714, 104 S.Ct. 3296, 82 L.Ed.2d 530 (1984)); U.S. CONST. amend IV. It provides specifically for "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures...." U.S. Const. amend IV. Generally, for a search or seizure to be lawful, it must be conducted pursuant to a warrant based upon probable cause. *Nicholas v. People*, 56 V.I. 718, 739 (2012)(The Fourth Amendment prohibits unreasonable searches and seizures without a warrant subject only to a few well-delineated exceptions). The Fourth

**Memorandum Opinion and Order**
*PVI v Roy Henderickson,* SX-2025-CR-00008
*PVI v. Shamoi Bell,* SX-2024-CR-00375
Page 6

**2026 VI Super14**

Amendment also permits a seizure and search, in the absence of a Warrant, but only upon a showing that the officers reasonably believed that criminal activity was occurring. *People of the V.I. v. Looby,* 68 V.I. 683, 695 (V.I. 2018).

¶19    In the Virgin Islands, a person's right to be free from unreasonable search and seizure is also guaranteed under the Fourth Amendment to the United States Constitution, made applicable to the Virgin Islands through the 1954 Revised Organic Act. See, *Heath v. People of the VI,* 78 V.I. 990, 1002 (V.I. 2024); 48 U.S.C.A. §1561. Warrantless searches have then been deemed *per se* unreasonable, absent a few well-established and delineated exceptions. *Nicholas,* 56 V.I. at 739. One of these exceptions is the automobile exception. Under the automobile exception, at a brief investigatory stop, a warrant is not required if the officer has particularized and objective facts to support his reasonable suspicion or probable cause to believe that the automobile contains evidence of criminal activity. *Browne v. People of the Virgin Islands,* 56 V.I. 207, 217 (V.I. 2012); *People v. Francis,* 2023 WL 5250232, *3, 2023 VI Super 48U (Super Ct 2023).

¶20    The People have the burden of proving by clear and convincing evidence that the seizure and/or search was based on reasonable, objective circumstances. *Francis,* 2023 WL 5250232, *3, (citing *People v. Rodriguez,* 2020 V.I. Super 34 (quoting *People v. Archibald,* 50 V.I. 74, 85 (V.I. Super. Ct. 2008). Whether the police have probable cause to conduct a search is based on a reasonableness standard. "Reasonableness is an objective inquiry measured by examining the totality of the circumstances surrounding the search and the nature of the search itself." *Prentice v. People,* 64 V.I. 79, 89 (Super. Ct. 2016)(citing, *United States v Montoya de Hernandez,* 473 U.S. 531, 105 S.Ct. 3304, 87 L.Ed.2d 381537 (1985). The court's inquiry centers on whether a reasonable person could believe that there is a fair probability that contraband or evidence of a crime will be found in a particular place. *Browne,* 56 V.I. at 217. The inquiry is fact specific, and therefore, finding of a Fourth Amendment violation on an automobile search depends on the facts particular to each case. *Id.* If the People do not meet their burden, the Court must suppress the evidence and exclude it from trial under the "fruit of the poisonous tree" doctrine. *Castillo v. People,* 59 V.I. 240, 255-56 (2013)(citing *Simmonds,* 53 V.I. at 561). This means that evidence obtained from an illegal search and evidence later discovered

as a result of the same search are considered the fruits or product of illegal police activity and may be excluded. *Id.*

### III.    DISCUSSION

¶21    Hendrickson and Bell argue that the officers lacked specific, articulable, objective evidence of criminal activity when they made the traffic stop. The premise of their argument is that the officers' detention and search were based solely on the smell of marijuana, and in the absence of any indicia of criminal activity, the detention and search were unconstitutional. Their argument relies on the decriminalization of marijuana and the lack of evidence that smell alone can indicate the quantity of marijuana a person possesses.  In support of their arguments, Defendants request that the court take judicial notice of the Agricultural Improvement Act of 2018, 19 V.I.C. §607a, and 19 V.I.C. §775, (Cannabis Use Act).

¶22    The Agricultural Improvement Act of 2018 (7 U.S.C. §1639o, et seq), commonly referred to as the 2018 Farm Bill, legalized hemp at the federal level, thereby removing hemp as a Schedule 1 controlled substance. While hemp (with equal to or under 0.3% THC) became federally legal, marijuana (with THC greater than 0.3%) remained federally illegal. Hence, the Agricultural Improvement Act allowed for cannabis with less than 0.3% THC to be legal under Virgin Islands territorial law while still illegal federally. Hendrickson and Bell argued that even under the 2018 Farm Bill, it would not have been possible for the officers to determine that the defendants were in possession of illegal cannabis from the smell alone.

¶23    In 2019, the Virgin Islands Legislature made possession of less than one ounce of marijuana civil infraction. See 19 V.I.C. §607(a). Section 607a(b) charges as simple possession the possession of one ounce or less of marijuana. The penalty for that offense is a fine of $100, payable no later than 90 days after assessment and forfeiture of the contraband. See 19 V.I.C. 607a(b)(1). The open and public display, consumption or use of one ounce or less of marijuana also commits a civil offense, punishable by a fine of not more than $200, payable no later than 90 days after assessment, and is subject to forfeiture of contraband.  See 19 V.I.C. 607a(b)(2). With the passage of section 607a, any person found in possession of less than one ounce of marijuana is no longer engaged in

criminal activity. Hendrickson and Bell argue that the smell of marijuana could not be indicative of a violation of Virgin Islands law, since possession of up to one ounce of marijuana is not by itself evidence of criminal activity. They argue that smell alone cannot reveal the quantity of marijuana, such that the officers would be able to determine that a crime was occurring. Thus, they argue, the officers' seizure and search precipitated only by the smell of marijuana was illegal.

¶24     Finally, Hendrickson and Bell also argue that under 19 V.I.C. §775 *et seq*, commonly known as the Cannabis Use Act, the use of marijuana has been extended for adult users in possession of up to two ounces of cannabis for recreational, medicinal and religious purposes. The Cannabis Use Act became effective January 18, 2023, and legalizes recreational Cannabis for persons over 21, maintains medical cannabis, creates a regulated commercial cannabis industry and establishes a licensing and enforcement system for the sale and use of marijuana, and reduces penalties for minor possession. With this legislation, there is a further shift away from criminal penalties for minor marijuana offenses. As with the prior legislation, Defendants maintained that there was no legislation in effect in December 2024 that would have allowed police officers to determine criminal liability based solely on the smell of marijuana. While the smell may indicate use or presence, it cannot indicate quantity, and it is the quantity of marijuana that distinguishes criminal liability from civil liability for marijuana possession in the Virgin Islands.

¶25     The People posit that the detention of Defendants and search of the Honda Civic were constitutional under the Fourth Amendment. They counter that the officers did not solely rely upon the smell of marijuana to conduct the seizure and search. They urge the Court to look at the totality of the circumstances based on the officers' observations of the defendants' behavior during the traffic stop, coupled with the smell of marijuana. Taken together, these particularized, objective circumstances dictate the reasonableness of the officers' belief that criminal activity was underway and the officer's subsequent search.

**A. The police Officers traffic stop was based on reasonable suspicion of a traffic offense and therefore lawful under the Fourth Amendment.**

¶26    The Defendants were operating a blue Honda Civic in a westerly direction on Northside Road when their vehicle was observed by Officers Patterson and Daniel without a front license plate and with the tint on the glass below the AS-1 line permissible by law. Virgin Islands law requires that all vehicles have license plates to the front and back of the vehicle. 20 V.I.C. §344. Having only a back license plate affixed to the vehicle is a violation of Section 334. Additionally, it is unlawful to operate a vehicle with tint on the windshield under the AS-1 line. To do so is a violation of 20 V.I.C. §497.

¶27    A police officer may conduct a traffic stop for any violation of the traffic laws of the Virgin Islands.  In this case, Defendants were observed operating a blue Honda Civic along a public roadway, Northside Road, in violation of the traffic laws and were thus lawfully subject to a traffic stop.

¶28    Officers Patterson and Daniel followed the Defendants' blue Honda Civic into the parking lot of the James Memorial Funeral Home. The officers pulled up next to the Honda Civic, exited the vehicle and approached the occupants.  At this point, Officers Patterson and Daniel had reasonable, articulable suspicion for the traffic stop, and could lawfully approach the occupants and request driver's license and registration.

**B. The police officers lawfully conducted an investigatory stop and based upon the smell of marijuana and the Defendants' escalating behavior acquired probable cause to conduct a search of the vehicle.**

¶29    Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), a search or seizure is lawful where the "Government's interest in preventing crimes outweighs… the intrusion on a person's liberty interest." A traffic stop may turn into a brief investigatory stop when it is based on particularized objective facts derived from the officer's experience and observations, and reasonable suspicion that criminal activity is afoot. *Blyden v. People*, 53 V.I. 637, 648 (2010) (citation omitted) "Reasonable suspicion "is a less demanding standard than probable cause." *People v. Samuel*, 46 V.I. 177, 184 (Super Ct 2005) (citation omitted) While the officers had a basis for a traffic stop, the investigatory stop was more intrusive and required that the officer(s) "articulate something more than an 'inchoate or unparticularized suspicion or hunch.'" *People v Cannergeiter*, 65 V.I. 114, 122 (Super. Ct. 2016)(quoting *United States v Sokolow*, 490 U.S. 1, 7, 109

**Memorandum Opinion and Order**
*PVI v Roy Henderickson,* SX-2025-CR-00008
*PVI v. Shamoi Bell,* SX-2024-CR-00375
Page 10

**2026 VI Super14**

S.Ct. 1581 104 L.Ed.2d 1 (1989). "Although "[r]easonable suspicion is an 'elusive concept' ... it unequivocally demands that 'the detaining officers must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.' " *United States v. Brown,* 448 F.3d 239, 246 (3d Cir.2006) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). *Blyden,* 53 V.I. 637, 649 "The Supreme Court has repeatedly recognized that a reasonable suspicion may be the result of ...specialized knowledge and investigative inferences, personal observation of suspicious behavior," and other factors. *United States v. Nelson,* 284 F.3d 472, 478 (3d Cir.2002) (citations omitted). Here, the Court must determine whether the objective facts of the case reasonably gave rise to the officers' suspicion of criminal activity. The analysis begins with the officers' smell of marijuana.

¶30    Possession of less than one ounce of marijuana in the Virgin Islands has been decriminalized and imposes only a civil penalty for the infraction. 19 V.I.C. §607a.   In view of §607a, the Supreme Court of the Virgin Islands has concluded that "because possession of marijuana remains unlawful in this Territory, officers may establish reasonable suspicion to conduct a *Terry* stop if the officer relied upon his or her experience and training to detect the presence of that contraband." *People v. Looby,* 68 V.I. 683, 689-99 (2018).

¶31    In December 2024, marijuana, regardless of its THC, was still considered contraband since it remained a Schedule I controlled substance under 19 V.I.C. §595. Under §595, possessions beyond what is legally permitted, selling or distributing without a license and growing without legal permission are all illegal.   The decriminalization of possession of small amounts of marijuana in the Virgin Islands under 19 V.I.C. §607a did not alter the illegal status of marijuana as a Schedule I controlled substance under 19 V.I.C. §595. *People v Pemberton,* 71 V.I. 251, 262 (Super Ct 2019). In 2023, the Virgin Islands Legislature sought to address this apparent disparity between §607a and §595 with the passage of the Cannabis Use Act.  To date, the mandate of the Cannabis Use Act has not been fully implemented.  What is clear, however, is a legislative  intent to decrease criminal responsibility for possession of small quantities. Absent evidence that quantity can be determined by olfactory senses, smell alone cannot form the basis of reasonable suspicion of criminal activity. See, *People v. Turnbull,* 2025 WL 2612646, *4,

**Memorandum Opinion and Order**
*PVI v Roy Henderickson,* SX-2025-CR-00008
*PVI v. Shamoi Bell,* SX-2024-CR-00375
Page 11

**2026 VI Super14**

2025 V.I. Super 26, ¶14 (Super Ct 2025) However, the detection of the odor with other articulable, objective circumstances pointing to criminal activity may form the basis for an investigatory stop and ultimately a search.

¶32 In this case, Officers Patterson and Daniel had cumulatively over seventeen years of experience and were involved in over a hundred traffic stops. They both testified that in this case they smelled marijuana as they approached the Honda Civic. The Court finds their testimony of the smell of marijuana credible. However, the Court affords minimal weight to Officer Daniel's testimony regarding Hendrickson's alleged admission to not having a Cannabis license, as it is not corroborated by body camera footage or other testimony. Although Officer Daniel attempted to attribute blame to static on the body camera recording for the absence of any recorded statements pointing to whether Hendrickson had a marijuana license, the Court's review of the body camera footage does not support Officer Daniel's view. It is evident to the Court that while there was static, every time someone was talking the static stopped, and the voice recording was clear. Officer Daniel was not heard inquiring of Hendrickson about the smell of marijuana or his having a license issued by the Office of Cannabis Regulation. Nonetheless, while certain portions of Officer Daniel's testimony are not on the body camera footage, the Court considers the testimony in light of the totality of the evidence presented. It simply means that his subsequent statements regarding marijuana licensure are less credible and lacks corroboration, but the testimony that he smelled marijuana remains credible and corroborates Officer Patterson's testimony.

¶33 In addition to Officers Patterson's and Daniel's smell of marijuana, the officers articulated circumstances that would have given them reasonable suspicion that a crime was occurring. Officers Daniel and Patterson stated that as they pulled up for the traffic stop, the Defendants had exited the vehicle. The Officers quickly exited their police vehicle and approached the Defendants, concerned that the Defendants intended to run. Officer Patterson told Bell to return to the passenger seat and he complied. Officer Daniel also told Hendrickson to return to the driver's seat and he complied. Officer Daniel proceeded to ask Hendrickson to produce his driver's license, which he took out of his pocket. To this point, the Defendants were complying with the officers' directives, and there was not a reason to suspect criminal activity.

**Memorandum Opinion and Order**
*PVI v Roy Henderickson,* SX-2025-CR-00008
*PVI v. Shamoi Bell,* SX-2024-CR-00375
Page 12

**2026 VI Super14**

¶34 Hendrickson, however, could be heard over the body camera footage repeatedly challenging the officers, even after being advised why he was traffic stopped and asked to calm down. Because of Hendrickson's noncooperative behavior, Officer Daniel determined that he needed to detain Hendrickson and asked him to step out of the vehicle. He took hold of Hendrickson's right hand when Hendrickson did not voluntarily exit and escorted him out. Officer Daniel admitted that Hendrickson was not free to leave. It is at this point that the Court finds that the Fourth Amendment is implicated because, through a show of authority Hendrickson had his freedom of movement restrained. *U.S. v. Mendenhall,* 446 U.S. 544, 553-554 (1980); *People v. Pemberton,* 71 V.I. 251, 263 n. 3 (Super. Ct. 2019).

¶35 The Defendants' conduct was suspicious. Hendrickson was protesting loudly and was twisting himself in a manner that made it difficult for Officer Daniel to handcuff him. Officers Patterson and Daniel also testified that all the while, Hendrickson was also "inching toward the back of the Honda Civic." Officer Daniel believed that based on Hendrickson's behavior, it appeared that Hendrickson was trying to evade detention. Bell found his way to the back of the Honda Civic and tried to interfere with Officer Daniel's attempts to handcuff Hendrickson. Officer Patterson testified that she and Officer Richardson interjected to stop Bell from interfering. Then, without warning, they both took off running.

¶36 To the point of running, the Defendants' behavior gave the police officers a reasonable belief that there may be criminal activity. This finding is not solely based on the smell of marijuana. It takes into consideration the officers' observations of the Defendants' behaviors as detailed earlier. Defendants' conduct was sufficient for the officers to have reasonable suspicion that the stop may involve more than just a traffic violation. What began as a routine traffic stop at which the smell of marijuana could be detected, escalated based upon the Defendants' conduct, to probable cause to conduct the search.

¶37 Through their testimony, the officers also characterized the search of the vehicle as an inventory search conducted pursuant to departmental policy when a vehicle is abandoned. (See *People of the V.I. v. Freeman,* LEXIS 15, at 17-18 (Super. Ct. Feb. 7, 2018) (highlighting three purposes in which the police may conduct an inventory search).

**Memorandum Opinion and Order**
*PVI v Roy Henderickson,* SX-2025-CR-00008
*PVI v. Shamoi Bell,* SX-2024-CR-00375
Page 13

**2026 VI Super14**

However, the evidence reflects that the vehicle was not ultimately impounded, and the People did not present detailed evidence of the inventory. Accordingly, the Court does not rely on the inventory search doctrine as the primary justification for the search. Instead, the Court finds that the search was lawful under the automobile exception based on probable cause.

## IV.  CONCLUSION

¶38  The Court finds that the initial traffic stop of Defendants' vehicle was supported by reasonable suspicion of traffic violations and was therefore lawful. The officers' subsequent investigatory detention was likewise justified based on the odor of marijuana and Defendants' escalating conduct. Under the totality of the circumstances, including the odor of marijuana, Defendants' challenging behavior, physical resistance to detention, interference with law enforcement efforts, and ultimate flight from the scene, the Court concludes that the officers had probable cause to believe that the vehicle contained contraband or evidence of a crime. As such, the warrantless search of the vehicle was lawful under the automobile exception to the Fourth Amendment.

Accordingly, it is hereby

**ORDERED** that Defendants' Motions to Suppress are hereby **DENIED**.

**DONE AND SO ORDERED** this ___*10*___, day of April 2026.

_____
**HON. YVETTE ROSS-EDWARDS**
**Judge of the Superior Court**

**ATTEST:**

**TAMARA CHARLES**
**Clerk of the Court**

By: _____
**Court Clerk II**

**Dated:** ___04/10/26___